1
2
3
4
5
6        IN THE UNITED STATES DISTRICT COURT
7        FOR THE DISTRICT OF ARIZONA
8
9   Jesus Jamie Aguilera-Guerra,            )   No. CV-12-258-PHX-NVW (BSB)
                                            )
10               Petitioner,                )   **REPORT AND RECOMMENDATION**
                                            )
11  vs.                                     )
                                            )
12  Charles L. Ryan, et. al,                )
                                            )
13               Respondents.               )
                                            )
14  _____ )

15        Jesus Jamie Aguilera-Guerra (Petitioner) has filed a *pro se* Petition for Writ of Habeas
16  Corpus pursuant to 28 U.S.C. § 2254 asserting three grounds for relief. (Doc. 1.) Respondents
17  argue that the petition should be dismissed as untimely, or alternatively, that Petitioner's claims
18  are procedurally defaulted and barred from federal habeas corpus review. (Doc. 7.) Petitioner
19  has filed a reply arguing that his Petition was timely because the statute of limitations was
20  statutorily and equitably tolled while he pursued post-conviction relief in state court. (Doc. 8.)
21  As set forth below, the Petition was untimely and the Court recommends that the Petition be
22  denied and dismissed with prejudice.

23  **I.  Factual and Procedural Background**

24        On September 19, 2005, Petitioner was indicted in the Arizona Superior Court, Maricopa
25  County, CR2005-013142, for unlawful flight from a law enforcement vehicle, theft of means
26  of transportation, possession or use of dangerous drugs, and possession or use of marijuana.

27
28

(Respondents' Ex. A, doc. 7-1 at 4[1].)  On October 20, 2005, Petitioner was indicted in a second matter, CR2005-014232, for first-degree murder.  (*Id.*)  These cases were consolidated for trial. (Respondents' Ex. A, Doc. 7-1 at 4-16.)  The jury was unable to reach a verdict on the theft of means of transportation charge, but convicted Petitioner of second-degree murder, possession of dangerous drugs, and possession of marijuana.  (Respondents' Ex. A, doc. 7-1 at 4; Doc. 1-1 at 24.)  The court sentenced Petitioner to an aggravated term of twenty years' imprisonment on the second-degree murder conviction, 4.5 years' imprisonment for possession of dangerous drugs, and 1.75 years' imprisonment for possession of marijuana.  The court ordered that the sentences for the possession of dangerous drugs and the possession of marijuana convictions run concurrently with one another, but run consecutively to the sentence for the second-degree murder conviction.  (Respondents' Ex. A, Doc. 7-1 at 15.)

## A.  Direct Appeal

Petitioner filed a timely notice of direct appeal.  (Respondents' Ex. A, doc. 7-1 at 4.)  His appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1969), advising the court that there were no colorable claims to raise on appeal and requesting that the court allow Petitioner to file a *pro se* brief.   (*Id.* at 4-5.)  Although the appellate court granted Petitioner leave to file a *pro se* brief, he failed to do so.  On December 20, 2007, the appellate court affirmed Petitioner's convictions and sentences.  (Respondents' Ex. A, doc. 7-1 at 4-16.) Petitioner did not petition the Arizona Supreme Court for review.

## B.  Post-Conviction Review

On January 9, 2007, Petitioner, proceeding *pro se*, filed a notice of post-conviction relief in the trial court pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. (Respondents' Ex. B, doc. 7-1 at 18.)  On Petitioner's motion, the court dismissed the post-conviction proceeding without prejudice.  (Respondents' Ex. C, doc. 7-1 at 23.)

On January 20, 2008, Petitioner filed a second notice of post-conviction relief in the trial

---

[1] Citations to "Respondents' Ex." refer to exhibits A-H attached to Respondents' Limited answer to Petition for Writ of Habeas Corpus (Doc. 7.).

court.  The court appointed counsel to represent Petitioner and the appointed-counsel advised the court that there were no colorable claims for relief.  (Respondents' Ex. E, doc. 7-1 at 29.)  On January 12, 2010,[2] nearly two years after commencing his second post-conviction proceeding, Petitioner filed a *pro se* petition for post-conviction relief in which he raised the following claims: (1) the trial court engaged in an improper *ex parte* communication with the jury in violation of Petitioner's due process rights; and (2) defense counsel rendered ineffective assistance by failing to adequately cross-examine the state's witness, Roy Donning.  (Respondents' Ex. E, doc. 7-1 at 29-34.)

On June 3, 2010,[3] the trial court dismissed the petition finding that: (1) the trial judge did not engage in any improper *ex parte* communication with the jury and, to the extent the jury revealed to the judge how it had voted on one of the charges, Petitioner was not prejudiced; and (2) Petitioner's claim of ineffective assistance of counsel lacked merit.  (Respondents' Ex. F, doc. 7-1 at 36-38.)

Over a year later, on September 26, 2011, Petitioner filed a petition for review, which the Arizona Court of Appeals denied as untimely under Rule 32.9(c) of the Arizona Rules of Criminal Procedure.  (Respondents' Ex. G, doc. 7-1 at 40-50; Ex. H, doc. 7-1 at 53-54.)  The appellate court rejected Petitioner's assertion that it should excuse his untimely filing because of his movements between facilities within the prison system and his irregular receipt of mail, including the trial court's June 3, 2010 Order dismissing his petition for post-conviction relief.  (*Id.*)

**C.  Petition for Writ of Habeas Corpus**

On February 7, 2012, Petitioner filed the pending Petition for Writ of Habeas Corpus raising three grounds for relief.  Respondents assert that the Petition should be dismissed as

---

[2]  The front  page of the petition is dated January 12, 2004, but the verification page includes the correct date, January 12, 2010.  (Doc. 1-1 at 6; Respondents' Ex. F, n. 1.)

[3]  The trial court's order is dated June 1, 2010, but was filed on June 3, 2010.  The Court will refer to this decision as the June 3, 2010 order.

untimely. Respondents also assert that Petitioner's claims are procedurally defaulted and barred from federal habeas corpus review. In reply, Petitioner argues that his claims are not time-barred because the limitations period was tolled while he was seeking post-conviction relief. As set forth below, the Court finds that the Petition was untimely and recommends that the Petition be denied and dismissed with prejudice.

## II. Statute of Limitations

### A. Timeliness of the Petition

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) provides a one-year statute of limitations for a state prisoner to file a petition for writ of habeas corpus in federal court. 28 U.S.C. § 2244(d)(1). The limitations period runs from "the date on which the [challenged state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period, however, is tolled during the time that a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *Hemmerle v. Schriro*, 495 F.3d 1069, 1074 (9th Cir. 2007) (in Arizona, filing a notice of post-conviction relief is sufficient to toll the AEDPA statute of limitations).

To assess the timeliness of the pending habeas Petition, the Court must first determine the date on which the state court judgment that Petitioner challenges became "final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). Following his trial and sentencing, Petitioner filed a timely notice of direct appeal. The Arizona Court of Appeals affirmed Petitioner's convictions and sentences on December 20, 2007. Petitioner did not petition the Arizona Supreme Court for review. Therefore, the judgment became final on January 21, 2008, thirty days after the Arizona Court of Appeals' decision on his direct appeal. *See* 28 U.S.C. § 2244(d)(1)(A); *Hemmerle*, 495 F.3d at 1072-74 (direct appeal is final upon expiration of time for seeking further appellate review); Ariz. R. Crim. P. 31.19(a) (establishing 30-day limit for petitioning Arizona Supreme Court to review court of appeals' decision on direct appeal).

The AEDPA limitations period was immediately tolled, however, because Petitioner had previously filed a notice of post-conviction relief. *See* 28 U.S.C. § 2244(d)(2). On June 3, 2010, the state trial court dismissed the post-conviction proceeding. (Respondents' Ex. F.) On September 26, 2011, Petitioner filed a petition for review in the Arizona Court of Appeals seeking review of the denial of his petition for post-conviction relief. (Respondents' Ex. G.) The appellate court dismissed the petition for review as untimely pursuant to Rule 32.9(c) of the Arizona Rules of Criminal Procedure. Because the petition for review was untimely, it was not "properly filed" and did not toll the statute of limitations. *See Allen v. Siebert*, 552 U.S. 3, 7 (2007) (untimely petition for post-conviction relief was not "properly filed" for purposes of the AEDPA); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("[w]hen a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).").

Therefore, the AEDPA statute of limitations began to run on June 4, 2010, the day after the state trial court dismissed Petitioner's post-conviction proceeding, and expired one year later on June 4, 2011. *See* 28 U.S.C. § 2244(d)(2); *Samaniego v. Ryan*, 2011 WL 7109366, *3 (D. Ariz. Dec. 1, 2011) (petition for post-conviction relief remained pending until the date the trial court summarily dismissed the proceeding and because petitioner did not appeal dismissal, the statute of limitations began to run the day after dismissal). Because Petitioner did not file his pending habeas Petition until February 7, 2012 — approximately eight months after the AEDPA statute of limitations period expired on June 4, 2011— the Petition is untimely and subject to dismissal unless equitable tolling applies.

**B. Equitable Tolling**

The AEDPA limitations period, as set forth in § 2244(d)(1), may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. *Holland v. Florida*, ___ U.S.___, 130 S. Ct. 2549, 2560 (2010). However, a petitioner is entitled to equitable tolling only if he shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. "The diligence required for equitable

tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 130 S.Ct. at 2565 (internal citations and quotations omitted). Whether to apply the doctrine of equitable tolling "'is highly fact-dependent,' and [the petitioner] 'bears the burden of showing that equitable tolling is appropriate.'" *Espinoza-Matthews v. California*, 432 F.3d 1021,1026 (9th Cir. 2005) (internal citations omitted). "When considering whether to apply equitable tolling, the Supreme Court has emphasized the need for 'flexibility' and for 'avoiding mechanical rules.'" *Nedds v. Calderon*, 678 F.3d 777, 780 (9th Cir. 2012) (quoting *Holland*, 130 S. Ct. at 2563).

The circumstances in this case do not support a finding that Petitioner diligently pursued his rights or that an extraordinary circumstance prevented him from timely filing his § 2254 petition. Petitioner asserts that he did not receive the trial court's June 3, 2010 ruling on his petition for post-conviction relief until August 24, 2011. (Doc. 8 at 2.) Petitioner explains that he was "imprisoned in Oklahoma during transitional changes of the Arizona Department of Corrections, and from there, he filed a [post-conviction relief] petition on January 12, 2010." (*Id.*) He further states that he "was transferred from Oklahoma back to Arizona and the court's [June 3, 3010] final [post-conviction relief] proceedings decision did not reach[] him until August 24, 2011." (*Id.*) Petitioner asserts that the delay in his receipt of the trial court's June 3, 2010 order was an "external force" that prevented him from filing a timely habeas petition in federal court because he "could not have filed further petitions without knowing the outcome of his [post-conviction relief] petition." (*Id.*)

The Ninth Circuit has held that "'a prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter.'" *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (quoting *Woodward v. Williams*, 263 F.3d 1135, 1143 (10th Cir. 2001)); *see also Diaz v. Kelly*, 515 F.3d 149, 155 (2d Cir. 2008) (collecting cases for proposition that "prolonged delay by a state court in sending notice of a ruling that completes exhaustion of state court remedies can toll the AEDPA limitations period").

- 6 -

To determine whether equitable tolling applies, the Court should consider: (1) when the petitioner actually received notice of the state court's decision; (2) whether petitioner "acted diligently to obtain notice," and (3) "whether the alleged delay of notice caused the untimeliness of his filing and made timely filing impossible." *Ramirez*, 571 F.3d at 998 (internal citations omitted). Delay alone is insufficient to warrant equitable tolling. Petitioner must also show that he acted diligently; for example, that "he made any attempt to check on the status of his petition before he received the notice." *Guillen v. Terhune*, 14 Fed. Appx. 865, 867 n.3 (9th Cir. 2001); *see also LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (holding that a twenty-one month delay in inquiring about status of post-conviction action did not constitute the requisite diligence).

Here, nothing in the record contradicts Petitioner's assertion that he did not receive notice of the State trial court's June 3, 2010 denial of his petition for post-conviction relief until August 24, 2011. However, there is no evidence that Petitioner acted diligently to determine the status of his state post-conviction proceeding. *See Woodward*, 263 F.3d at 1143. Petitioner does not assert that he made any effort to inquire about the status of his post-conviction proceeding. *See Kennedy v. Hernandez*, 2008 WL 4378183, at *7-8 (C.D. Cal. August 25, 2008) (petitioner did not establish requisite diligence when he made no attempt to ascertain status of state habeas petition and learned of denial of that petition over one-and-a-half years after filing the petition and over eight months after it had been denied). Therefore, the record does not establish that Petitioner exercised the requisite diligence for equitable tolling.

Additionally, Petitioner's transfer between prison facilities in Oklahoma and Arizona does not constitute an extraordinary circumstance. *See Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005) ("In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lock downs, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances."); *Lindo v. Lefever*, 193 F. Supp. 2d 659, 663 (E.D.N.Y. 2002) (same). "If limited resources, lack of legal knowledge, and the difficulties of prison life were

an excuse for not complying with the limitation period, the AEDPA's limitation period would be meaningless since virtually all incarcerated prisoners have these same problems in common." *Bolanos v. Kirkland*, 2008 WL 928252, at *4 (E.D. Cal. April 4, 2008), *adopted by* 2008 WL 1988878 (E.D. Cal. May 05, 2008). Petitioner has not carried his burden of establishing that an extraordinary circumstance prevented him from filing a timely petition for writ of habeas corpus or that he acted diligently. *See Pace*, 544 U.S. at 418. Accordingly, his § 2254 Petition is untimely and should be denied

Respondents also argue that Petitioner's claims are procedurally barred from federal habeas corpus review. Because this Court has already determined that the pending Petition was not timely filed within the limitations period of the AEDPA, it need not reach Respondents' alternative argument. Nonetheless, in an abundance of caution and in the interest of efficiency, the Court will address Respondents' alternative argument.

**III.  Exhaustion and Procedural Bar**

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court[4] in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

A claim has been "fairly presented" if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *Baldwin*, 541 U.S. at 33. A

---

[4]  In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F. Supp. 2d 925, 931-33 (D. Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

"state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31-32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raises a claim in state court, but the state court finds the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53, 130 S. Ct. 612, 614-19 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman,* 501 U.S. at 731-32. In this situation, federal habeas corpus review is precluded if the state court opinion

relies on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n. 6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id.* at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits. *Coleman*, 501 U.S. at 750. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the Court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

### A. Application of Procedural Bar to Petitioner's Claims.

Petitioner has raised three grounds for relief in the pending habeas Petition. He arguably presented Grounds One and Two to the trial court on post-conviction review and the trial court

denied relief.[5]  Petitioner reasserted Grounds One and Two in the petition for review he filed with the Arizona Court of Appeals.  (Respondents' Ex. G, doc. 7-1 at 39-47.)  In that petition for review, he also raised Ground Three for the first time.[6]  The appellate court found Petitioner's claims untimely and barred from review pursuant to Arizona Rule of Criminal Procedure 32.9(c).

The Arizona Court of Appeals simply dismissed the petition for review as untimely and therefore its procedural ruling was independent of the merits of Petitioner's claims.  *See La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001).  Additionally, Rule 32.9(c) is an adequate state ground because it is clear, firmly established, and consistently applied.  *See Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly" followed Rule 32); *State v. Grange*, 635 P.2d 843, 845 (Ariz. Ct. App. 1981) (reaffirming that Rule 32.9 time limits are strict, and noncompliance may only be excused for a valid reason); *State v. Bortz*, 821 P.2d 236, 238-39 (Ariz. Ct. App. 1991) (finding that defendant failed to satisfy the strict requirements of Rule 32.9).

---

[5]  In Ground One of his pending Petition, Petitioner alleges that his rights to due process and the effective assistance of counsel were violated when the jury informed the trial judge of its vote on one count and counsel failed to object to the manner in which the trial court handled the situation. In Ground Two of his Petition, Petitioner alleges that his Fifth and Sixth Amendment rights to confront witnesses against him and to the effective assistance of counsel were violated because counsel failed to adequately cross-examine a witness. In Ground Three of the Petition, he alleges that he was denied due process and access to the courts by the delayed notice of the post-conviction court's denial of his petition for post-conviction relief.

[6]  Respondents argue that Ground Three is procedurally defaulted because Petitioner never presented it to any state court. (Doc. 7 at 22.)  Liberally construing the petition for review, Petitioner presented this claim to the Arizona Court of Appeals on review of the denial of his petition for post-conviction relief. (Respondents' Ex. G.)  However, as Respondents argue, that claim is procedurally defaulted because Petitioner failed to present it to the trial court on post-conviction review. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995). And, as discussed in greater detail in part III, section A, Ground Three is also procedurally barred pursuant to the appellate court's application of an adequate and independent procedural ground to deny relief.

Therefore, the Arizona Court of Appeals dismissed the petition for review as untimely on an adequate and independent state procedural ground, which bars federal habeas corpus review. *See Correll v. Stewart*, 137 F.3d 1404, 1417-18 (9th Cir. 1998) (petitioner's federal claim is procedurally barred when a state court has found a prisoner's federal claim precluded based on his failure to meet a state procedural requirement). "[I]t is not the province of a federal habeas court to reexamine state court determinations of state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) Therefore, this Court is bound by the state court's determination that Petitioner's petition for review of the denial of his petition for post-conviction relief was untimely under Arizona law. *See Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007) (holding that federal court is bound by state court's interpretation and application of its own procedural rules).

## B. Overcoming the Procedural Bar

### 1. Cause and Prejudice

Because the Arizona Court of Appeals applied a procedural bar to dismiss Petitioner's post-conviction proceeding, based on an adequate and independent state ground, this Court is precluded from reaching the merits of Petitioner's claims unless he establishes "cause and prejudice" or a "fundamental miscarriage" to excuse the procedural bar. *See Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *LeGrand* v. *Stewart*, 133 F.3d 1253, 1261(9th Cir. 1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). A showing of interference by state officials, constitutionally ineffective assistance of counsel, or that the factual or legal basis for a claim was not reasonably available may constitute cause. *Murray*, 477 U.S. at 488. "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner must demonstrate that the alleged constitutional violation "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional

dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). If Petitioner fails to establish cause for his procedural default, the Court need not reach the prejudice prong. *Smith v. Murray,* 477 U.S. 527, 533 (1986).

Here, Petitioner does not directly address the issue of "cause and prejudice." Rather, he states that "the habeas petition was absolutely timely filed. Period." (Doc. 8 at 4.) This Court, however, has addressed the timeliness of the Petition for purposes of 28 U.S.C. § 2244(d)(1)(A), and found it untimely. For the reasons previously discussed, Petitioner's arguments regarding whether his Petition was timely do not constitute "cause" to excuse his procedural default. Moreover, even if Petitioner established cause, he has not has not shown "actual prejudice resulting from the errors [occurring during his trial and] of which he complains." *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991); *United States v. Frady*, 456 U.S. 152, 168 (1982). Petitioner must establish that the errors at his trial "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Petitioner does make any arguments addressing the issue of prejudice.

### 2. Fundamental Miscarriage of Justice.

A federal court may also review the merits of a procedurally defaulted claim if petitioner demonstrates that failure to consider the merits of his claim will result in a "fundamental miscarriage of justice." *Schlup*, 513 U.S. at 327. A "fundamental miscarriage of justice" occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (citing *Murray,* 477 U.S. at 496.) To satisfy the "fundamental miscarriage of justice" standard, petitioner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Id.* at 327; 28 U.S.C. § 2254(c)(2)(B).

Petitioner has not offered any new evidence, or asserted that, in light of any newly discovered evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. In sum, Petitioner has not shown a basis for overcoming the procedural bar to federal habeas corpus review of his

defaulted claims.  Furthermore, even if Petitioner could overcome the procedural bar, as set forth below, he is not entitled to habeas corpus relief because his claims lack merit.

**IV.  Petitioner's Claims**

> **A.  Federal Court Review of State Court Decisions**

This Court's review of Petitioner's claims is constrained by the applicable standard of review set forth in 28 U.S.C. § 2254(d).  If a habeas corpus petition includes a claim that has been "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d)(1), federal habeas relief is not available unless petitioner shows: (1) that the state court's decision "was contrary to" federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, __ U.S.__, 132 S.Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court.  28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 785 (2011).  This standard is "difficult to meet." *Id.* at 786. It is also a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (citation and internal quotation marks omitted).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision.  *Greene*, 132 S. Ct. at 44.  A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular

case. *Brown v. Payton*, 544 U.S. 133, 141 (2005).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 562 U.S.___, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "'[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination.'" *Id.*

**B.  Ground One — Denial of Due Process and Ineffective Assistance of Counsel**

In Ground One, Petitioner argues that he was denied due process and the right to a fair trial when the jury improperly revealed to the trial court the jurors' votes on the charge of "theft of a means of transportation."  (Doc. 1 at 7, Ex. 1.)  Petitioner challenged the jury's communication with the trial court on post-conviction review and the trial court rejected Petitioner's claim. (Respondents' Ex. F, doc. 7-1 at 36-38.)

During deliberations, the jury sent a note to the trial court asking: "What happens if we are deadlocked on the "theft of a means of transportation charge[?]  We are currently 11 guilty & 1 not-guilty."  (Doc. 1-1 at 20.)  The trial court discussed the jury's question with the prosecutor and defense counsel outside of the jury's presence.  The trial court, however, did not reveal the numerical vote to the prosecutor or defense counsel.  (Doc. 7-1 at 37, Doc. 1-1 at 10.)  After a discussion with counsel, the trial court responded to the jury as follows: "Please advise us if you reach an impasse in your deliberations."  (Doc. 1-1 at 10, 20.)

The jury sent a second note asking: "If we reach an impasse on a single charge, does it affect the entire trial, or just that individual charge?"  (Doc. 1-1 at 22.)  After discussing the question with the prosecutor and defense counsel, the trial court responded as follows: "No, an impasse on a single charge does not affect the entire trial, just that individual charge."  (Doc. 1-1 at 10-11, 22).  The jury subsequently completed a verdict form on the theft of means of transportation charge stating "Impasse — No decision reached."  (Doc. 1-1 at 24.)

On post-conviction review, the court found that the jury's notes to the trial court and the court's responses did not constitute improper *ex parte* communication.  The court further found

- 15 -

that, even if the disclosure of the jury's vote to the trial court was improper, it did not prejudice Petitioner because the jury ultimately deadlocked on the charge about which it had sent the note. (Respondents' Ex. F, doc. 7-1 at 37.)  Petitioner has not shown that the state court's resolution of this claim was contrary to, or an unreasonable application of, clearly established federal law.

If Petitioner were challenging his conviction or sentence in a federal case, and the trial judge had inquired into the numerical division of the jury, reversal would be required. *Brasfield v. United States*, 272 U.S. 448, 449 (1926).  However, "[s]ince *Brasfield's per se* rule rests on supervisory power, it does not apply in federal habeas corpus review." *Fry v. Pliler*, 2004 WL 5264357, at *40 n. 28 (E.D. Cal. August 27, 2004) (citing *Lowenfield v. Phelps*, 484 U.S. 231, 239-40 & n. 3 (1988)).  Thus, this Court's review of Petitioner's claim is limited to whether the trial court's communication with the jury violated Petitioner's rights to due process and a fair trial.

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal citation omitted).  "Coercive statements from the judge to the jury result in a denial of the defendant's right to a fair trial and an impartial jury." *Packer v. Hill*, 291 F.3d 569, 578 (9th Cir.), *rev'd on other grounds*, *Early v. Packer*, 537 U.S. 3 (2002).  A court applies a "totality of the circumstances" test to determine whether a verdict was coerced by the trial court's actions. *Early*, 537 U.S. at 8.

Here, in response to a jury question indicating that it was "deadlocked" on the charge of theft of means of transportation and that its vote was split "11 guilty & 1 not guilty," the court, after consulting with counsel and without revealing the vote, merely advised the jury to notify the court if it reached an impasse.  A short time later, in response to a second note, the court advised the jury that "an impasse on a single charge does not affect the entire trial, just that individual charge."  The jury subsequently returned its verdict stating that it could not reach a verdict on the charge of theft of means of transportation.  Although the jury had previously disclosed its numerical split on that charge to the trial court, eleven guilty and one not-guilty,

there is no evidence that the trial court's statements had a coercive effect on the jury or otherwise resulted in an unfair trial, especially in view of the verdict. "The trial court made no threats or other statements that could be interpreted as exerting undue pressure on any juror; nor did it ever indicate that it was necessary for the jury to reach a verdict. The trial court never expressed an opinion on [Petitioner's] guilt or innocence of the charges; nor did it comment on the evidence." *Fry*, 2004 WL 5264357, at *40.

Petitioner also argues that counsel was ineffective for failing to object to the manner in which the trial court handled the jury's notes. Although Petitioner did not present his related claim of ineffective assistance to the trial court, this Court can nonetheless consider that claim because the Court finds that it lacks merit. *See* 28 U.S.C. § 2254(b)(2). Because the trial court's communication with the jury was not improper, counsel was not ineffective for failing to raise an objection. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996) (counsel's "failure to take a futile action can never be deficient performance . . . . ").

Petitioner has not shown that the trial court's communication with the jury in response to its notes violated his rights to due process or a fair trial, or that counsel's failure to object thereto amounted to ineffective assistance of counsel. Thus, Petitioner has not shown that the state court's rejection of his claims was contrary to, or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d).

## C. Ground Two — Ineffective Assistance of Counsel

In Ground Two, Petitioner asserts a violation of his Sixth Amendment right to counsel on the ground that "material and prejudicial testimonial evidence was introduced . . . without the opportunity for proper cross-examination." (Doc. 1 at 8.) Petitioner argues that, "had trial counsel properly questioned [the State's] witness [Roy Donning, Jr.] about the amount of alcohol consumed . . . it could have cast doubt on his testimony and its truthfulness," and that Donning perjured "himself by stating that he only drank beer." (*Id.*) Petitioner also asserts that Donning "was awaiting sentencing" and that his testimony might have influenced the length of

his sentence.  (*Id.*)  The post-conviction court rejected this claim. (Respondents' Ex. F.)  As discussed below, Petitioner is not entitled to relief on this claim.[7]

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner. *Id.* at 687.  To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.*  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  Review of counsel's performance is extremely limited.  Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

To establish a Sixth Amendment violation, petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance. *Id.* at 691-92.  To show prejudice, petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  *See also Ortiz v. Stewart*, 149 F.3d 923, 933 (9th Cir. 1998).  The prejudice component "focuses on the question

---

[7] Petitioner also asserts a "*Crawford* violation" based on defense counsel's inadequate cross-examination of the State's witness, Donning. (Doc. 1 at 8.)  In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court addressed the admissibility of a testimonial statement by an unavailable witness. The Court held that the government could not introduce out-of-court testimonial evidence against a defendant in a criminal trial unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. 541 U.S. at 68-69. Here, Petitioner challenges defense counsel's cross-examination of an in-court witness and does not include any allegations regarding "out-of-court testimonial evidence."  Accordingly, *Crawford* does not apply to this case.

whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The court need not address both *Strickland* requirements if the petitioner makes an insufficient showing on one. *See Strickland*, 466 U.S. at 697 (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to satisfy either prong of the *Strickland* test obviates the need to consider the other") (citing *Strickland*, 466 U.S. at 688).

"'Surmounting *Strickland's* high bar is never . . . easy.'" *Richter*, 562 U.S.___, 131 S.Ct. 770, 786 (quoting *Padilla v. Kentucky*, 559 U.S.___, 130 S.Ct. 1473, 1485 (2010)). Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult, because both standards are "highly deferential," and because *Strickland's* general standard has a substantial range of reasonable applications. *Richter*, 562 U.S.___, 131 S.Ct. at 788 (citations omitted). The issue under § 2254(d) is not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Petitioner argues that defense counsel failed to properly cross-examine Donning to establish that, during Petitioner's trial, Donning was in jail awaiting sentencing on a probation violation in an unrelated criminal matter. However, during trial the State called Donning as a witness and elicited testimony regarding his pending criminal matter. (Doc. 1-1 at 8, doc. 1-2 at 18.) Donning testified that he had been on probation since April 7, 2006, after pleading guilty to a charge of criminal damage. He testified that he was currently in jail awaiting sentencing for a probation violation. (*Id.*) Donning also testified that he witnessed the shooting on July 10, 2005. (Doc. 1-2 at 18.)

Therefore, even assuming that defense counsel's performance was deficient, Petitioner has not established prejudice. As set forth above, Donning admitted to his criminal background, including that he was in jail awaiting sentencing on a probation violation. Petitioner has not

presented, and the record does not include, any evidence that Donning was offered some sort of deal that influenced his testimony during Petitioner's trial.

Petitioner also argues that defense counsel failed to adequately cross-examine Donning about the amount of alcohol he had consumed and, thus, failed to "cast doubt" on the truthfulness of Donning's testimony. Donning, however, testified that he had been celebrating his birthday at a party the night before and had consumed "two beers" "before [he] witnessed the shooting." (Doc. 1-2 at 18; Respondents' Ex. F.) He recalled "giving a videotaped interview to Detective Herman of the Avondale Police Department on the morning of July 10, 2005," but did not recall telling the detective that he had "had a double shot of [t]equila in addition to the beer." (Doc. 1-2 at 18-19.) After reviewing a transcript of that interview, Donning testified that he had "a double shot of tequila," "in addition to the two beers," and a "Smirnoff." (Doc. 1-2 at 19-20.) Another witness, Lupe Patino, also testified that Donning "was drunk." (Doc. 1-2 at 14, 22.)

Again, even assuming defense counsel's performance was deficient, Petitioner fails to establish prejudice. Donning testified that he had consumed two beers, a double shot of tequila, and a "Smirnoff" on the night in question. Another witness testified that Donning "was drunk." (Doc. 1-2 at 14, 19-20, 22.) The jury heard evidence regarding Donning's consumption of alcohol; Petitioner does not describe any additional information defense counsel should have elicited from Donning on cross-examination.

Petitioner has not shown that defense counsel's allegedly deficient performance resulted in any prejudice. Therefore, he has not shown that the state court's determination of his ineffective assistance claims is contrary to, or an unreasonable application of, *Strickland*.

### D. Ground Three — Deficiencies in State Post-Conviction Proceedings

In Ground Three, Petitioner alleges that the trial court failed to provide him with a copy of its June 3, 2010 order denying his petition for post-conviction relief in a timely manner. To the extent Petitioner challenges the state court's procedure for providing notice of its decision, such a claim is not amenable to federal review. A violation of state law is not grounds for

habeas relief.  *See Estelle*, 502 U.S. at 67–68 (it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions; a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States). Petitioner argues no set of facts that support a federal claim.  Additionally, the Ninth Circuit has consistently held that deficiencies in state post-conviction proceedings do not violate the United States Constitution.  *See Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (*per curiam*) (errors in Arizona's post-conviction relief proceedings, such as delay in deciding a petition for post-conviction relief, are not cognizable in federal habeas proceedings).  Accordingly, Petitioner is not entitled to habeas corpus relief on this claim.

**V.  Conclusion**

Based on the foregoing, the Petition for Writ of Habeas Corpus should be dismissed as untimely or, alternatively, because Petitioner's claims are procedurally defaulted and barred from federal habeas corpus review and lack merit.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED and DISMISSED.**

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma paupers on appeal be denied because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. Rule 4(a)(1) should not be filed until entry of the District Court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Failure to file timely objections

to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

DATED this 7th day of December, 2012.


_____
Bridget S. Bade
United States Magistrate Judge

- 22 -